UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION
CASE NO. 3:10-CV-00081-DCR-EBA

LEON D. PRUITT and
REBECCA PRUITT                                                    PLAINTIFFS

vs.

GENIE INDUSTRIES, INC. and
SUNBELT RENTALS, INC.                                            DEFENDANTS

and

SUNBELT RENTALS, INC.                                         THIRD-PARTY
                                                               PLAINTIFF

vs.

C.J. MAHAN CONSTRUCTION                                        THIRD-PARTY
COMPANY, LLC                                                   DEFENDANT

---

## MEMORANDUM IN SUPPORT OF MOTION OF C. J. MAHAN CONSTRUCTION COMPANY, LLC FOR SUMMARY JUDGMENT

Third-Party Defendant / Counterclaimant / Cross-Claimant, C. J. Mahan Construction Company, LLC ("C.J. Mahan"), by counsel and in support of its Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 on the claims of Sunbelt Rentals, Inc. and on C.J. Mahan's counterclaim for declaratory judgment, states as follows:

### STATEMENT OF FACTS

On or about August 13, 2009, C.J. Mahan contacted Sunbelt Rentals, Inc. ("Sunbelt") to rent an aerial lift. (Gobert Dep.[1] at p. 114). C.J. Mahan required the lift on a bridge construction project over the Kentucky River. (Lape Dep.[2] at p. 11; Travis Dep.[3] at p. 18; Clark second Dep.[4]

---

[1] Attached hereto as Ex. A, Amber Gobert Dep. pp. 110-134
[2] Attached hereto as Ex. B, Kevin Lape Dep. pp. 9-19; 50-54
[3] Attached hereto as Ex. C, Gary Travis Dep. pp. 18-33

at p. 58-60). On or about August 14, 2009, Sunbelt delivered a Genie Manlift 4WD DSL, Model S-80D 4WD ("manlift") to the C.J. Mahan bridge construction site. (Travis Dep. at p. 11; Lape Dep. at p. 14).

Amber Gobert, the manager of the Sunbelt location that delivered the aerial equipment, testified as to Sunbelt's procedure for delivering equipment. Ms. Gobert testified that upon arrival at a delivery site, a delivery driver is to find the customer to whom he is delivering the equipment, which information is found on the Rental Out Receipt. (Amber Gobert Dep. at p. 110, 116).

> Q. Okay. That's what I'm asking for. So, it is the it is the policy and procedure of Sunbelt to find someone with decision making authority on behalf of the company, corporation or customer?
>
> A. That is renting, correct.
>
> Q. You don't just want to find some layperson that's could be a temporary employee or somebody lower down?
>
> A. Right.

(Id. at p. 119). In this case, the delivery driver would have sought to find Jeff Pieper, the C.J. Mahan construction supervisor on this site and the individual who ordered the manlift. (Id. at p. 116). After finding the authorized representative of C.J. Mahan, Jeff Pieper in this case, the delivery driver is to meet with the representative, answer any questions on the machine, see if training is needed, and have the authorized representative review and then sign the Rental Out Receipt. (Id. at p. 110).

Gary Travis, Sunbelt's delivery driver arrived at the construction site at 9:00 a.m. to deliver the manlift. (Travis Dep. at p. 20). Pursuant to Sunbelt company policy, Mr. Travis was then to find Jeff Pieper, the representative of C.J. Mahan with decision making authority to

---

[4] Attached hereto as Ex. D, Brian Clark second Dep. pp. 58-60

receive the equipment. (Gobert Dep. at p. 119). Mr. Travis, however, presented C.J. Mahan's temporary employee, Kevin Lape, with a single page entitled "Rental Out" receipt page, numbered "2 of 2". (Travis Dep. at p. 27-29). A copy of this Rental Out receipt is attached hereto as Exhibit E. This document sets out the details of the equipment, delivery information, and rental rates, and is numbered "Page 1 of 2" and "Page 2 of 2". (Id. at p. 26). Mr. Travis did not discuss the terms of the Rental Out receipt with Mr. Lape nor did he point out any of the provisions on the unnumbered backs of the two pages. (Id. at p. 29; Lape Dep. at p. 54). Sunbelt simply obtained Mr. Lape's signature on the bottom of Page 2 of 2 of the Rental Out receipt. (Travis Dep. at p. 29).

Mr. Lape testified that he worked for C.J. Mahan as a carpenter and had been on the job for only about a week. (Lape Dep. at p. 9). C.J. Mahan's records show that Mr. Lape had only been working this construction project for one day. When the manlift was delivered to the jobsite, he was simply asked to "sign for it." (Id. at p. 16). Mr. Lape was never afforded the opportunity to read the Rental Out receipt. (Id. at p. 19), nor does Mr. Lape recall ever having seen a portion of the Rental Out other than that which he signed. (Id. at pp. 50-51).

By signing the Rental Out receipt, Mr. Lape intended only to acknowledge that Sunbelt had dropped off the manlift at the construction site. (Id. at p. 52). He had neither the intention nor the authority to enter a contract on behalf of C.J. Mahan. (Id. at p. 52; Matheny Dep.[5] at p. 58). In short, Mr. Lape was acknowledging that the construction equipment was dropped off. In fact, Mr. Lape did not have authority, implied or express, to enter into contracts on C.J. Mahan's behalf. (Matheny Dep. at p. 57-58).

No one disputes that the Rental Out Receipt is a boiler-plate contract drafted by Sunbelt and submitted to customers. As stated above, the Rental Out Receipt is numbered "Page 1 of 2"

[5] Attached hereto as Ex. F, Hope Matheny Dep. pp. 57-58

3

and "Page 2 of 2". The basic terms and conditions, e.g., offer, acceptance, and consideration, are set forth on these 2 pages. At the bottom of Page 2 of 2, there is a signature by the C.J. Mahan temporary worker, Kevin Lape.

Above the signature, there are eight sections. The relevant sections are section 6 and 8, which read as follows:

> 6. Customer has received, read, and understands and agrees to the estimated charges herein and all the terms and conditions of this Contract, including the Release and Indemnification provisions in Section 8.

> 8. For operations in California: customer is renting equipment registered under the California Air Resources Board (CARB) Portable Equipment Registration Programs (PERP). The operator of this equipment is subject to the requirements of PERP regulation and local Air Pollution Quality District Rules. Under the PERP Regulation, the renter is required to keep a copy of the rental agreement and the CARB registration certificate, including operating conditions and notification requirements, with the equipment at all times. By signing this form, the renter acknowledges receipt of these documents.

Charles Heeke, the Sunbelt service manager, was deposed regarding his reading of the above. Sunbelt's service manager testified as follows:

> Q. If you would, look at above the signature line down there by Kevin Lape. Look at the side No. 6. Take a second to read that if you would, please.
>
> ...
>
> A. No. 6?
>
> Q. Yes.
>
> A. "Customer has received, read, understands and agrees to the estimated charges herein, and all of the terms and conditions of this contract including the release and indemnification provisions in section 8."
>
> Q. And would you go down to section 8 there.

A.  "For operations in California, customer is renting equipment registered under the California Air Resources Board portable equipment registration program.  The operator of this equipment, registration certificate, including operating conditions and notification requirements with the equipment at all times. By signing this form, the renter acknowledges receipt of documents."

Q. Okay.  Do you see anywhere that there's anything that says adopt or onto the--that says see--please see the back page?

A. Not in those two sentences, no.

Q. Do you see it anywhere above that signature line?

MR. TACKETT: The question is, do you see anything that says adopt or incorporate?

MR.MOORE: Or -- yes, making reference to the backside of this particular document.

A. No.

Q. Do you see anything above that signature line that would tell you that you need to read the back side of that page?

A. No.

(Charles Heeke Dep.[6] at pp. 175-178).

The Sunbelt store manager, Amber Gobert, also was examined as to the language on the

Rental Out Receipt.

    Q. Now, I'm looking at paragraphs 1 through 8 at the bottom of the page, up above Kevin Lape's signature. Can you point to me specifically where it tells Kevin Lape or anyone reading this that they need to go to the backside of this document to read the terms and conditions?

    A.  I don't see anywhere on page 2, no.

    Q.  Do you see any language in there that would tell someone to read the backside of this particular document?

---

[6] Attached hereto as Exhibit G, Charles Heeke Dep. pp. 175-178

A. I do not.

(Amber Gobert Dep. at pp. 125-6)

> Q. So the first word customer of the sentence, are any of the other words bold or all caps or anything that would draw your attention to anything else?
>
> A. If you're asking me if No. 6 has any bold text or capitalized text, the answer is no.
>
> Q. Are the words terms and condition all caps or bold, anything that would draw an average person's attention to them?
>
> A. No.

(Amber Gobert Dep. at pp. 133-4).  In short, an average person reads section 6 and goes to section 8 above Kevin Lape's signature.  There is no distinguishing language informing an average person to read the unnumbered back of the document.

On the back side of each numbered page in all capital letters, larger font, and what appears to be bold lettering are the words "ADDITIONAL TERMS AND CONDITIONS". Nowhere on either numbered page are the words "ADDITIONAL TERMS AND CONDITIONS" written, much less in all capital letters, larger font, or in bold.  In paragraph 8 on this unnumbered back side of the document there is an indemnity clause, which is at the heart of this matter.

Sunbelt contends that the Rental Out receipt signed by Kevin Lape constitutes a contract that (a) releases Sunbelt from any liability to C.J. Mahan, including for damages caused by Sunbelt's own negligence, (b) obligates C.J. Mahan to indemnify Sunbelt from and against all liability to Plaintiff for damages, and (c) obligates C.J. Mahan to indemnify Sunbelt for those damages incurred by reason of Sunbelt's own negligence.  (Sunbelt Third-Party Comp. at 3). Sunbelt bases this contention on small print language buried on the back of the Rental Out

6

Receipt. A copy of the unnumbered back page of the Rental Out Receipt is attached hereto as Exhibit H. Sunbelt's delivery driver neither instructed Mr. Lape to look to this language nor read any of these terms to him, as they were too small for Mr. Travis to read. (Travis Dep. at p. 33).

The Rental Out receipt contains Mr. Lape's signature on numbered Page 2 of 2. Mr. Lape's signature appears at the bottom of the page. Nowhere above Mr. Lape's signature is there language telling him to turn to the unnumbered reverse side, to the "Release and Indemnification" clause. (Ex. E.; Lape Dep. at p. 53; Heeke Dep. at p. 177; Gobert Dep. at p. 126). However, immediately above Mr. Lape's signature are eight numbered sections of text. Section 6 provides, "Customer has received, read, understands and agrees to the estimated charges herein and all the terms and conditions of this Contract, including the Release and Indemnification provision in Section 8." Three lines later, section 8 relates to operations in California and makes no mention of release or indemnification. As acknowledged by the testimony of Sunbelt's own employees, Amber Gobert and Charles Heeke, the only terms and conditions appearing above Mr. Lape's signature are those eight numbered sections of text.

When he signed this Rental Out Receipt, Kevin Lape merely had the authority to acknowledge delivery of the equipment ordered. Even if he had possessed the authority to enter contracts on behalf of C.J. Mahan, and were he to believe this was a contract, there was nothing to alert him to the additional terms on the back of the page he signed.

## ARGUMENT

### STANDARD OF REVIEW

If the record in the case indicates there is no genuine issue of material fact regarding a claim, then the moving party is entitled to summary judgment. Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment must show the basis for its motion, but if the party opposing

the motion fails to show an essential element of the party's burden of proof, summary judgment should be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23; 106 S. Ct. 2548, 2552 (1986). This is a diversity action, so the Court should apply the law of Kentucky when determining the validity of the Release and Indemnity Clause, but the Court should apply the federal summary judgment standard when deciding this motion. See Erie Railroad v. Tompkins, 304 U.S. 64 (1938); Gafford v. Gen. Elec. Co., 997 F.2d 150, 165 (6th Cir. 1993). Here, because the Release and Indemnity Clause is unenforceable under Kentucky law, and furthermore because the contract as a whole is invalid under Kentucky law, Sunbelt cannot prove its claim. C.J. Mahan is entitled to judgment as a matter of law, and the Third-Party Complaint for indemnity should be dismissed.

## I.      MR. LAPE HAD NO AUTHORITY TO ENTER A CONTRACT ON C.J. MAHAN'S BEHALF.

Since there is no evidence that Kevin Lape was authorized by C.J. Mahan to enter into binding contracts for C.J. Mahan, any contract between Sunbelt and C.J. Mahan is unenforceable. Kentucky Revised Statute section 355.2A-201(1)(b) states a "lease contract is not enforceable by way of action … unless ... [t]here is a writing, signed by the party against whom enforcement is sought or by that party's authorized agent, sufficient to indicate that a lease contract has been made between the parties and to describe the goods leased and the lease term." In other words, 355.2A-201(1)(b) requires this construction lease contract to be signed by C.J. Mahan's authorized agent to be binding in total. There is no evidence that Mr. Lape was authorized to sign a contract on behalf of C.J. Mahan.

Under general principles of agency law, Kevin Lape could either have had actual or apparent authority to act as C.J. Mahan's agent. For Mr. Lape to have actual authority, C.J. Mahan must have expressly or implicitly granted him authority to bind C.J. Mahan contractually.

8

There must have "been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act." Terbovitz v. Fiscal Court of Adair County, Ky., 825 F.2d 111, 116 (6th Cir. 1987) (overruled on other grounds).  There is no evidence showing that Mr. Lape had such authority.   Neither in Mr. Lape's, Ms. Matheny's, nor Mr. Pieper's depositions is there and indication that Mr. Lape was authorized to bind his employer to contract terms.

For Mr. Lape to have apparent authority, C.J. Mahan must have held "out to others that the agent possesses certain authority that may or may not have been actually granted to the agent." Mill Street Church of Christ v. Hogan, 785 S.W.2d 263, 267 (Ky. App. 1990). According to Mr. Lape, he was only acknowledging receipt of the equipment being delivered. Furthermore, comment (a) to the 2d Restatement of Agency, § 8, states that for apparent authority to exist, a party must "believe and *have reason to believe* that there is authority." (emphasis added). Sunbelt could not have reasonably believed that Mr. Lape, a temporary union carpenter, had authority to contractually bind C.J. Mahan.

In the case at hand, there is no evidence that Mr. Lape had any type of authority to enter into a contract binding C.J. Mahan to anything.   Therefore, the Rental Out Receipt is not enforceable by Sunbelt against C.J. Mahan and there can be no indemnity.  As a side, C.J. Mahan does not dispute that it received the manlift and paid for the use, e.g., implied contract, but it is disputing the enforceability of the Rental Out Receipt itself.

## II.    THE BACK SIDE OF THE RENTAL OUT RECEIPT IS NOT INCORPORATED INTO THE NUMBERED PAGES, THE CONTRACT, OR ANY PORTION OF THE DOCUMENT ABOVE THE SIGNATURE.

Assuming the Court finds the Rental Out Receipt to be an enforceable contract, then the Court must interpret the contract.  The back side of the Rental Out Receipt is not incorporated

into the numbered pages, the contract, or any portion of the document above Kevin Lape's signature. Although whether contract incorporates additional terms by reference is a question of fact, there is no question of fact that the back side of the Rental Out Receipt is not incorporated by reference.

Sunbelt seeks indemnification from C.J. Mahan based upon language from the unnumbered side of the Rental Out Receipt that is entitled "ADDITIONAL TERMS AND CONDITIONS". Specifically, the Release and Indemnification Clause is found in paragraph 8 on this unnumbered back side. The entire back side of the document and specifically the Release and Indemnification Clause, relied upon by Sunbelt in bringing this suit, are unenforceable as they are not a part of a contract.

Kentucky Revised Statutes section 446.060 mandates that any writing to be signed must be signed at or near the end of the document. This requirement infers that the document expresses all of the terms of the agreement by which the signee intends to be bound. Gentry's Guardian v. Gentry, 293 S.W. 1094 (Ky. 1927). When there are additional terms of the contract following the signature, there is no assurance that the signee intends to be bound by such terms. R.C. Durr Co., Inc. v. Bennett Industries, Inc., 590 S.W.2d 338 (Ky. 1979).

Despite KRS § 446.060, the doctrine of incorporation by reference is not abolished under Kentucky law. Courts have consistently held that additional terms may be incorporated by reference if such reference appears in **clear language** above the party's signature. Bartelt Aviation, Inc. v. Dry Lake Coal Company, Inc., 682 S.W.2d 796 (Ky. App. 1985)(emphasis added). The court ruled in Hertz Commercial Leasing Corp. v. Joseph, 641 S.W.2d 753, 756 (Ky. App. 1982), that incorporating language must "be conspicuous **by being in larger or other contrasting type or color**." (emphasis added). Since Hertz, the court has consistently limited

10

this to limitations on implied warranties, while choosing to uphold the requirement that incorporating language be plain and clear. Bartlet Aviation, Inc. v. Dry Lake Coal Company, Inc., 682 S.W.2d 796 (Ky. App. 1985); Home Lumber Co. v. Appalachian Regional Hospitals, Inc., 722 S.W.2d 912 (Ky. App. 1987). Whether a contract incorporates something by reference into the main contract is a question of fact. Home Lumber Co. v. Appalachian Reg. Hospitals, Inc., 722 S.W.2d 912 (Ky. App. 1987). Conversely, whether the incorporating language is conspicuous is a question of law. Bartlet Aviation, Inc. v. Dry Lake Coal Company, Inc., 682 S.W.2d 796, 798 (Ky. App. 1985)

There is one common theme that runs through all the cases cited above, which is that all the incorporating language had some variation of referencing the "reverse" side of the document or some contrasting notice. In Bartlett, the document stated "SEE TERMS AND CONDITIONS ON THE REVERSE SIDE HEREOF ...", which is also in all capitals. Id. at 797. In Hertz, the language relied upon was "**Terms and Conditions**". Id. at 755. The Hertz Court noted that the words are "in larger letters and darker ink than the balance thereof." Id. In Home Lumber, the Court sent the question of incorporation back down because the language was unclear. In R.C. Durr, Kentucky's then highest court found that the incorporating language was absent, even though the reverse side had 20 numbered terms and conditions. Id. at 339. In Childers & Venters, Inc. v. Sowards, 460 S.W.2d 343, 344 (Ky. 1970), the Court noted the language "reverse side hereof", which was in darker print. Id. at 344.

In the case at hand, there is no incorporating language that says "reverse", no capitalization, and no bold lettering telling someone that the reverse side is adopted and incorporated. In fact, both employees of Sunbelt, Heeke and Gobert, agree that there is no language above Kevin Lape's signature telling a person to look at the back side of the Rental

Out Receipt. In other words, a reasonable observer would conclude that the fronts of each page comprised the entire document.

The face of each document contains a page number, "Page 1 of 2" and "Page 2 of 2." The back of each document is unnumbered and is titled "ADDITIONAL TERMS AND CONDITIONS". The words "ADDITIONAL TERMS AND CONDITIONS" are not to be found anywhere on the numbered front pages.

Sunbelt's only argument is to state that Section 6 has plain and clear incorporating language. Section 6 states "[c]ustomer has received, read, and understands and agrees to the estimated charges herein and all the terms and conditions of this Contract, including the Release and Indemnification provisions in Section 8". "[a]ll the terms and conditions" is different than "ADDITIONAL TERMS AND CONDITIONS". Therefore, this does not rise to plain and clear as required by the case law above for incorporation. There is no reference to the reverse side and no "all caps". Although the language capitalizes "C" in contract, "R" in release, and "I" in indemnification, it simply tells a reader to go to Section 8. This is ambiguous at best, and it does not signal the reader to turn the page and review the "ADDITIONAL TERMS AND CONDITIONS" on the reverse side.

During the deposition of Charles Heeke, Sunbelt's shop supervisor, he read Section 6, and then was asked to read "Section 8". (Heeke Dep. at p. 177). Instead of going to the reverse side, Heeke read Section 8 on the front of the document above Kevin Lape's signature. There is no additional language on the front of the document, before the signature line, that clearly indicates where a party to the agreement may find Section 8, which is referred to by the document. Furthermore, the page numbering fails to indicate that the back of the pages should

be considered when reviewing and agreeing to the contract. The front of each page is labeled consecutively as "Page 1 of 2" and "Page 2 of 2."

Amber Gobert admitted during her deposition that there was no language in Section 6 on the front of the document that would indicate that a reader should turn the page and read the Section 8 on the back of the page. (Gobert Dep. at p. 126).

There is no clear and plain incorporating language above the signature line in the Rental Out Receipt, e.g., "reverse side", all capitalization, or bold type. As seen by Sunbelt's own employees, Heeke and Gobert, there is no language telling an average person to go read the reverse side. Moreover, even if the Court finds some type of language that may be incorporating, that language is not conspicuous by being in larger or other contrasting type or color. The Kentucky Court of Appeals, in Home Lumber set forth a useful standard in determining whether incorporation has been effectuated: whether a reasonable person would have been aware of the clause under the circumstances. Id. at 915. Here, Sunbelt's own shop supervisor, Heeke read the front of the contract and was not made aware of the indemnification clause on the reverse side. There is no plain and direct language that would make any reasonable person aware of this clause or the other terms and conditions on the reverse side. Therefore, the reverse side of the Rental Out Receipt is not a part of any agreement between C.J. Mahan and Sunbelt.

### III. THE RELEASE AND INDEMNIFICATION CLAUSE VIOLATES KRS § 371.180.

If the Court finds that the Rental Out Receipt is a binding contract, then any provision purporting to indemnify or hold harmless Sunbelt from its own negligence is unenforceable as in violation of KRS § 371.180. Specifically, the Release and Indemnification Clause on the

unnumbered reverse of the Rental Out Receipt is unenforceable as in violation of KRS § 371.180.[7]  KRS § 371.180 provides that for any contract entered into on or after June 20, 2005, "[a]ny provision contained in any construction services contract purporting to indemnify or hold harmless a contractor from that contractor's own negligence or from the negligence of his or her agents, or employees is void and wholly unenforceable." KRS § 371.180(2).

Since there is no case law providing guidance on the application of this statute, it must be interpreted.  The interpretation of a statute is a matter of law.  Commonwealth v. Garnett, 8 S.W.3d 573, 575–6 (Ky. App. 1999). The primary purpose of judicial construction is to carry out the intent of the legislature. In construing a statute, the courts must consider "the intended purpose of the statute-and the mischief intended to be remedied." Id.  "A court may not interpret a statute at variance with its stated language." SmithKline Beecham Corp. v. Revenue Cabinet, 40 S.W.3d 883, 885 (Ky. App. 2001). The first principle of statutory construction is to use the plain meaning of the words used in the statute. See Revenue Cabinet v. O'Daniel, 153 S.W.3d 815 (Ky. 2005); KRS § 446.080. "[S]tatutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required." Commonwealth v. Plowman, 86 S.W.3d 47, 49 (Ky. 2002). We lend words of a statute their normal, ordinary, everyday meaning. Id. "We are not at liberty to add or subtract from the legislative enactment or discover meanings not reasonably ascertainable from the language used." Commonwealth v. Harrelson, 14 S.W.3d 541, 546 (Ky. 2000). The courts should reject a

---

[7] Paragraph 8 on the reverse side reads "Error! Main Document Only.RELEASE AND INDEMNIFICATION. TO THE FULLEST EXTENT PERMITTED BY LAW, CUSTOMER INDEMNIFIES, RELEASES, HOLDS SUNBELT HARMLESS AND AT SUNBELT'S REQUEST, DEFENDS (WITH COUNSEL APPROVED BY SUNBELT) FROM AND AGAINST ALL LIABILITIES, CLAIMS, LOSSES, DAMAGES, AND EXPENSES (INCLUDING ATTORNEY'S FEES AND EXPENSES) HOWEVER ARISING OR INCURRED, RELATED TO ANY INCIDENT, ANY DAMAGE TO PROPERTY, INJURY TO, OR DEATH OF, ANY PERSON OR ANY CONTAMINATION OR ALLEGED CONTAMINATION, OR VIOLATION OF LAW OR REGULATION CAUSED BY OR CONNECTED WITH THE USE, POSSESSION OR CONTROL OF THE EQUIPMENT DURING THE RENTAL PERIOD OR BREACH OF THIS CONTRACT, WHETHER OR NOT CAUSED BY THE ACTIVE OR PASSIVE NEGLIGENCE OR OTHER FAULT OF ANY PARTY INDEMNIFIED HEREIN AND ANY OF THE FOREGOING ARISING OR IMPOSED IN ACCORDANCE WITH THE DOCTRINE OF STRICT OR ABSOLUTE LIABILITY. CUSTOMER'S INDEMNITY OBLIGATIONS SHALL SURVIVE THE EXPIRATION OR TERMINATION OF THIS CONTRACT. IF ANY PART OF THIS SECTION IS DETERMINED INVALID BY A COURT OF COMPETENT JURISDICTION, CUSTOMER AGREES THAT THIS RELEASE AND INDEMNIFICATION SHALL BE ENFORCEABLE TO THE FULLEST EXTENT PERMITTED BY LAW."

construction that is "unreasonable and absurd, in preference for one that is 'reasonable, rational, sensible and intelligent [.]'" Commonwealth v. Kerr, 136 S.W.3d 783, 785 (Ky. App. 2004); Commonwealth v. Kash, 967 S.W.2d 37, 43–44 (Ky. App. 1997).

Here, KRS § 371.180(2) voids "any provision contained in any construction services contract purporting to indemnify or hold harmless a contractor from that contractor's own negligence or from the negligence of his or her agents, or employees ...". This leads to the questions as to what is a "construction services contract" and "who is a contractor"?

KRS § 371.180(1)(a) defines a "construction services contract". A "construction services contract" can be one of two things, as evidence by the word "or" connecting KRS § 371.180(1)(a)1 and (a)2. KRS § 371.180(1)(a)1 provides, in pertinent part, that a "construction services contract" is "a contract or agreement **RELATING TO** the construction, alteration, repair ... or maintenance of any ... highway, road ... or improvement attached to real estate ..." (emphasis added). Instead of writing a narrow anti-indemnification statute that addressed only contracts *for* construction, the Legislature defined the statutory scope as including all contracts or agreements "**relating to**" construction. (emphasis added). "Relating to" is defined as "hav[ing] connection, relation, or reference [to.]" The American Heritage Dictionary of the English Language 1472 (4th ed., Houghton Mifflin Co. 2000); see also Commonwealth v. McBride, 281 S.W.3d 799 (stating that the most common rule of statutory interpretation is the plain meaning).

There is no argument that Sunbelt delivered an 80-foot manlift for C.J. Mahan to use on the construction of a bridge over the Kentucky River on Highway 22. (Travis Dep. p. 18; Kevin Lape Dep. p. 14). Furthermore, the facts of this case demonstrate the relationship between the construction equipment rental contract and the construction project on which the manlift was to be used. The rental contract written by Sunbelt specifically recited on its face the name of the

construction project, its location, and its job number. Sunbelt employees delivered the commercial-sized manlift to the construction site where it was to be used. As such, a contract to rent equipment that is designed and intended for use in a construction project certainly has a connection, relation, and reference to the construction project and is therefore in literal terms a contract "relating to construction." See Elliott Crane Serv., Inc. v. H.G. Hill Stores, Inc., 840 S.W.2d 376, 380 (Tenn. Ct. App. 1992)(holding that a rental agreement for a construction crane was, in the terms of the Tennessee anti-indemnification statute, an agreement "relative to the alteration, repair or maintenance of a building, structure or appliance" (internal quotation marks and citation omitted)). Therefore, the transaction between Sunbelt and Mahan falls within the statutory definition of KRS § 371.180(1)(a)1 as "a contract or agreement **RELATING TO** the construction, alteration, repair … or maintenance of any … highway, road … or improvement attached to real estate …".

KRS § 371.180(1)(a)2 provides, in pertinent part, that a "construction services contract" is "[a] contract or agreement **relating to** … other professional and technical support services provided in connection with any of the work or activities described in subparagraph 1 of this paragraph." In other words, it is providing other professional and technical support services in connection with construction. Again, renting a piece of equipment that is built for use in constructions projects is "relating to" other professional and technical support services in connection with construction. Therefore, the transaction between Sunbelt and Mahan falls within the statutory definition of KRS § 371.180(1)(a)2.

Now that it is clear that the Rental Out Receipt falls within either definition of a "construction services contract", we must determine whether sunbelt falls within the definition of a contractor. KRS 371.180(1)(b) states a "'Contractor' means the person offering a contract for

services provided." It should be initially noted that the word "construction" is not within the definition. In other words, if the definition was to be limited only to "construction contractors", then the statute should have stated such.

In plain language, the statute reads a contractor is anyone who contracts to render a service. Furthermore, it is apparent from reading the statute as a whole that if there is a contract for services **relating to** construction work referenced in subparagraph 1., then that person is a "Contractor". Here, the evidence shows that there is an agreement between Sunbelt and C.J. Mahan, which is seen by the Rental Out Receipt. Furthermore, evidence shows that Sunbelt rendered rental services to C.J. Mahan. Therefore, Sunbelt falls within the statutory definition of a "Contractor", because it offered to provide C.J. Mahan rental services.

As the statute states, "[a]ny provision contained in any construction services contract purporting to indemnify or hold harmless a contractor from that contractor's own negligence or from the negligence of his or her agents, or employees is void and wholly unenforceable." All the evidence shows that Sunbelt entered into a construction services contract purporting to require C.J. Mahan to indemnify it from Sunbelt's own negligence, and therefore, any provision in the Rental Out Receipt purporting to indemnify or hold harmless Sunbelt from its own negligence is void and wholly unenforceable, specifically including paragraph 8 on the reverse side of the Rental Out Receipt.

## IV.   C.J. MAHAN IS EXPEMPT FROM LIABILITY PER KRS § 342.690 TO SUNBELT.

KRS § 342.690(1) limits C.J. Mahan's from liability to worker's compensation benefits and immunizes it from any tort liability arising from Leon Pruitt's work-related accident. Since

Sunbelt has settled Leon Pruitt's tort claim against Sunbelt, Sunbelt cannot recover amounts it paid Leon Pruitt arising in tort from C.J. Mahan.  KRS § 342.690(1) states, in pertinent part, that:

> The liability of an employer to another person who may be liable for or who has paid damages on account of injury or death of an employee of such employer arising out of and in the course of employment and caused by a breach of any duty or obligation owed by such employer to such other **shall be limited to the amount of compensation and other benefits for which such employer is liable** under this chapter on account of such injury or death, unless such other and the employer by written contract have agreed to share liability in a different manner.

(emphasis added).

In Labor Ready, Inc. v. Johnson, 289 S.W.3d 200, 207-8 (Ky. 2009), the Court discussed indemnity.  When discussing the impact of KRS § 342.690, the Court noted this section limits an employer's liability to indemnify a third-party tortfeasor to the amount of workers' compensation benefits that the employer must pay.  Id. at 208; (citing Capps v. Herman Schwabe, Inc., 628 F.Supp. 1353, 1359 (W.D.Ky.1986).  See also Burrell v. Electric Plant Bd. of City of Franklin, 676 S.W.2d 231 (Ky. 1984), overruled on other grounds in Dix & Associates Pipeline Contractors, Inc. v. Key, 799 S.W.2d 24 (Ky.1990)).  The Court's reliance on Capps and Burrell further indicates that if an employer pays amounts owed to an employee, then the employer can have no exposure to a third-party for its employee.  Therefore, a suit against an employer must be dismissed.

Here, C.J. Mahan has paid Leon Pruitt pursuant to Kentucky Workers' Compensation laws, and therefore, a claim for indemnity must be dismissed generally.

Sunbelt can only argue that C.J. Mahan is liable to it under the "shared liability" exception in KRS § 342.690.  Does the Release and Indemnification clause in Sunbelt's Rental

18

Out Receipt even apply here under the "share liability" exception set for in KRS § 342.690? The facts and history of Labor Ready will assist in discussing the Court's opinion.

In Labor Ready, Johnson worked for Mid-America, and Hudson worked for Labor Ready. Johnson was hurt by Hudson while on the job for Mid-America. Johnson sued Labor Ready and Hudson. Labor Ready and Johnson moved for summary judgment under several theories. The trial court granted judgment in Labor Ready's favor based upon KRS § 342.690, and the Court of Appeals reversed.

In its opinion, the Supreme Court noted the following:

> ...the trial court noted that the contract set forth in paragraph 5 of the "Work Ticket" required Mid–America to indemnify Labor Ready "from any claims and all liability" caused by a Labor Ready employee and "from any claims for bodily injury (including death) made by [Mid-America's] employees." The contract also provided that Mid–America agreed "to waive any immunity provided by workmen's compensation or other industrial insurance laws." Noting that Mid–America might be required to pay both workers' compensation benefits and damages if Johnston were permitted to proceed against Labor Ready, **the court determined that such a result was unreasonable and contrary to the purposes of the Workers' Compensation Act because it would effectively abrogate the Act's limitation of tort liability**.

Id. at 203; (emphasis added). It is important to note that the above language specifically waives "immunity provided by workmen's compensation or other industrial insurance laws". Sunbelt's clause does not waive contain a specific waiver of Worker's Compensation.

In what appears to be a response to the trial court's statement above, the Court noted that KRS § 342.690 permits **employers** and third-parties who may be liable to agree to share an **employer's liability for damages**[8] in a manner different from that set forth in the statute, provided they do so by written contract. Id. at 208; (emphasis added). Then, the Court stated

---

[8] An "employer's liability for damages" is that "amount of compensation and other benefits for which such employer is liable" under the Worker's Compensation Act. KRS 342.690.

that it is "not convinced that a contractual indemnity provision must be viewed as being abhorrent to Chapter 342." Id.  In other words, contractual indemnity may be abhorrent in some situations but not in others.

The Labor Ready Court specifically brought in the trial court's analysis of contractual indemnity for some reason and made the above two statements, which are "share employer's liability for damages" by written contract and "contractual indemnity provisions" may not be abhorrent to Chapter 342.  By the Labor Ready Court stating that KRS § 342.690 allowed for sharing "**an employer's liability for damages**" by written contract,  it appears that an employer and a third-party tortfeasor can share or divide only the employer's exposure for damages.  In other words, contractual indemnity can only flow one way, e.g., employer and third-party tortfeasor can agree that the third-party tortfeasor will indemnify the employer.  This explains the Court statement concerning that it is "not convinced that a contractual indemnity provision must be viewed as being abhorrent to Chapter 342."  If this analysis is not the case, then the immunity from liability under the Act would be eviscerated.

In reading the Indemnity section of Labor Ready, there appears to be some absolutes:

1.  An employee cannot recover in tort from an employer;

2.  An employer's maximum exposure is what it is liable for under the Act;

3.  If an employer pays under the Act, then it cannot be required to indemnify unless there is a written agreement; and

4.  An employer and a third-party can divide "employer's liability for damages" however they want.

In applying the above analysis, Mr. Pruitt can never recover in tort from C.J. Mahan, not even by contractual circumvention of the Act, e.g, suing Sunbelt and having Sunbelt get the

20

money for C.J. Mahan.   C.J. Mahan's maximum exposure is limited to that "amount of compensation and other benefits for which such employer is liable" under the Worker's Compensation Act.  Next, it important to remember that Sunbelt and C.J. Mahan did not contract for indemnity because, (i) the Rental Out Receipt was on a boiler-plate document presented and signed by a temporary employee of C.J. Mahan who did not have authority to enter into contracts for C.J. Mahan; and/or (ii) none of the clauses on the back page of the document are incorporated into the alleged contract under KRS § 446.060; and/or (iii) all provisions in the Rental Out Receipt purporting to indemnify or hold harmless Sunbelt from its own negligence are void and wholly unenforceable under KRS § 371.180.  In other words, there was no agreement between to divide liability between Sunbelt and C.J. Mahan.  Lastly, and most importantly, no one can seek to recover amounts paid to Leon Pruitt from C.J. Mahan.

As a side, the Labor Ready and Mid-America indemnity agreement had language specifically waiving Worker's Compensation immunity.  Even if this Court disagrees with the above analysis, C.J. Mahan request that the Court find that the Rental Out Receipt language is not applicable, because that Worker's Compensation immunity was not specifically mentioned. See Pentaflex, Inc. v. Express Service, Inc., 130 Ohio App.3d 209, 719 N.E.2d 1016 (Oh. App. 1998).

## CONCLUSION

There is no evidence that Mr. Lape had any authority, actual or apparent, to enter into a contract binding C.J. Mahan to indemnify Sunbelt.  As the Rental Out Receipt was not executed by an authorized agent of C.J. Mahan, it is unenforceable against C.J. Mahan under KRS § 355.2A-201(1)(b).  As a result, Sunbelt cannot obtain indemnification from C.J. Mahan.  Even if Mr. Lape had the authority to bind C.J. Mahan, the Release and Indemnification Clause that

Sunbelt relies upon in its claims against C.J. Mahan is not incorporated in to the Rental Out Receipt.

Pursuant to KRS § 446.060, the terms and conditions of a contract are contained above the signature line. For language appearing anywhere else to be incorporated into the contract, it must be incorporated by clear, plain, and conspicuous language which is in larger or other contrasting type or color that the rest of the document. Sunbelt's Rental Out Receipt contains no such language anywhere on the page bearing Mr. Lape's signature. There is nothing on that page which would make a reasonable person aware of the Release and Indemnification clause contained on the reverse side of that document. As the reverse side was not incorporated into the document signed by Mr. Lape, and even if that document is construed as a valid contract despite Mr. Lape's lack of authority, C.J. Mahan never agreed to the Release and Indemnification clause. C.J. Mahan is not bound to contractual terms to which it never agreed, nor even knew where part of the alleged contract.

Even if Sunbelt's Release and Indemnification clause had been legally incorporated into the Rental Out Receipt, and were this document a valid contract, that clause is void and wholly unenforceable under KRS § 371.180. Any provision in a construction services contract purporting to indemnify or hold harmless a contractor from that contractor's own negligence is void and wholly unenforceable. As such, every provision in the Rental Out Receipt purporting to indemnify or hold harmless Sunbelt from its own negligence is void and wholly unenforceable, specifically including Sunbelt's Release and Indemnification since it is exactly such a provision.

Regardless of the fact that the Release and Indemnification clause is altogether void, Sunbelt is precluded from seeking indemnity from C.J. Mahan under the provisions of KRS §

22

342.690.  The Workers Compensation Act provides that an employee cannot recover in tort from an employer and that an employer's maximum liability to an employee is the amount it is liable for worker's compensation benefits.  C.J. Mahan has paid Mr. Pruitt the full amount of those benefits owed.  C.J. Mahan's total liability has been satisfied and it cannot be required to indemnify Sunbelt for any further damages.

Both Sunbelt's claims against C.J. Mahan, and C.J. Mahan's claims for declaratory judgment are purely matters of law and there are no genuine issues as to any material fact. Accordingly, C.J. Mahan is entitled to judgment as a matter of law.

Respectfully submitted,

BOEHL STOPHER & GRAVES, LLP
444 West Second Street
Lexington, Kentucky 40507
Telephone: (859) 252-6721

/s/ Bradly E. Moore

_____

BRADLY E. MOORE

## CERTIFICATE OF SERVICE

I hereby certify that on this the 1st day of October, 2012, I sent copies of the foregoing via electronic and regular mail to the following persons:

| | |
|---|---|
| Todd M. Powers, Esq. <br> Megan C. Ahrens, Esq. <br> SCHROEDER, MAUNDRELL, BARBIERE & POWERS <br> 5300 Socialville-Foster Road, Suite 200 <br> Mason, OH 45040 <br> **Co-Counsel for Plaintiffs** | R. Lanahan Goodman, Esq. <br> 3706 Broadview Drive <br> Cincinnati, OH 45208 <br> **Co-Counsel for Plaintiffs** |
| Christopher R. Cashen, Esq. <br> Robert M. Croft, Jr., Esq. <br> DINSMORE & SHOHL, LLP <br> 250 W. Main Street, Suite 1400 <br> Lexington, KY 40507-1746 <br> **Counsel for Defendant,** <br> **Genie Industries, Inc.** | John L. Tackett, Esq. <br> Phillips Parker Orberson & Arnett, PLC <br> 163 E. Main Street, Suite 130 <br> Lexington, KY 40507 <br> **Co-Counsel for Defendant,** <br> **Sunbelt Rentals, Inc.** |

| Brian Stephenson, Esq. | Michael S. Maloney, Esq. |
|---|---|
| Ward, Hocker & Thornton, PLLC | Schiller, Osbourn, Barnes & Maloney, PLLC |
| 9300 Shelbyville Road, | |
| Suite 700 | 401 W. Main Street, Suite 1600 |
| Louisville, KY 40222 | Louisville, KY 40202 |
| *Counsel for Intervening Plaintiff, Zurich N.A.* | *Co-Counsel for Sunbelt Rentals, Inc.* |

s/ Bradly E. Moore
BOEHL, STOPHER & GRAVES, LLP