

SCHILLER OSBOURN BARNES & MALONEY, PLLC
Attorneys at Law

**Michael S. Maloney**
Partner
Phone: 502-625-1670
Fax: 502-779-9328
mmaloney@sobmlegal.com

January 19, 2011

VIA ELECTRONIC MAIL AND FIRST CLASS MAIL

Ms. Hope Matheny
Risk Manager
CJ Mahan Construction Company
3400 Southwest Blvd.
P.O. Box 670
Grove City, OH 43123

Jim Johnston, Esq.
CJ Mahan Construction Company
P.O. Box 670
3400 Southwest Blvd.
Grove City, OH 43123

RE: Leon and Rebecca Pruitt
D/L: 04/22/2010
My Claim No.: EHZ5806
My Client: Sunbelt Rentals

Dear Ms. Matheny and Mr. Johnston:

As you know I represent Sunbelt Rentals, Inc. with respect to claims asserted by your employee, Leon Pruitt who was involved in an accident on April 22, 2010 while operating a Genie telescoping boom lift (Serial No. 88008-8054) which CJ Mahan had rented from Sunbelt on or about August 14, 2009. As you may be aware, Mr. Pruitt and his wife recently filed suit against Sunbelt and others in the United States District Court for the Eastern District of Kentucky at Covington. A copy of the Complaint is enclosed for your review.

I have attached a copy of the rental agreement between Sunbelt and CJ Mahan and call your attention to paragraphs 8 and 9 of the additional terms and conditions concerning indemnification and insurance. I have also attached a Certificate of Insurance from MJ Insurance, Inc. which confirms that Sunbelt is an additional insured on CJ Mahan's Commercial General Liability Policies issued by Zurich American Insurance Company and Illinois National Insurance Company - AIG. Pursuant to the rental contract provisions and the Certificate of Insurance CJ Mahan, Zurich American Insurance Company and/or Illinois National Insurance Company - AIG are obligated to defend and indemnify Sunbelt with respect to the claims

asserted in the Pruitts' Complaint. As such please consider this Sunbelt's formal demand that CJ Mahan, Zurich American Insurance Company and/or Illinois National Insurance Company - AIG defend and indemnify Sunbelt with respect to the Pruitts' claims.

I would appreciate you forwarding a copy of this correspondence and the attachments to CJ Mahan's liability insurers with instructions for the assigned claim representatives to contact me within the next fifteen (15) days. If you have any questions or need additional information please let me know.

Very truly yours,

Michael S. Maloney

MSM/hjb

Enclosures

cc: MJ Insurance, Inc. (via First Class Mail only)

Matheny & Johnston Ltr Re Def & Indemnify

Case: 3:10-cv-00081-DCR Doc #: 1 Filed: 12/15/10 Page: 1 of 9 - Page ID#: 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT COVINGTON**

**LEON D. PRUITT**
P.O. Box 896
Garrison, Kentucky 41141

and

**REBECCA PRUITT**
P.O. Box 896
Garrison, Kentucky 41141

Plaintiffs

**vs.**

**GENIE INDUSTRIES, INC.**
18340 NE 76th Street
Redmond, WA 98052

**Also Serve Statutory Agent:**
Corporation Service Company
300 Deschutes Way SW
Suite 304
Tumwater, WA 98501

and

**TEREX CORPORATION**
200 Nyla Farm Road
Westport, CT 06880

**Also Serve Statutory Agent:**
Corporation Service Company
50 Weston Street
Hartford, CT 06120-1537

and

**Case No.**

**Judge**:

**COMPLAINT**
**AND**
**JURY DEMAND**

Case: 3:10-cv-00081-DCR Doc #: 1 Filed: 12/15/10 Page: 2 of 94 - Page ID#: 2

**SUNBELT RENTALS, INC.**
2341 Deerfield Drive
Fort Mills, SC 29715

**Also Serve Statutory Agent:**
CT Corporation System
2 Office Park Court
Suite 103
Columbia, SC 29223

and

**ASHTEAD GROUP plc**
Kings House
36-37 King Street
London, England
EC 2V 8BB

Defendants

Plaintiffs Leon Pruitt and Rebecca Pruitt, by and through counsel, file their Complaint, as follows:

**PARTIES AND JURISDICTION**:

1. Plaintiffs, Leon and Rebecca Pruitt, are and were at all times mentioned herein residents and citizens of Lewis County, Kentucky.

2. Defendant Genie Industries, Inc. (hereinafter "Genie") is a designer, and manufacturer and seller of aerial lifts and work platforms incorporated in the State of Washington with its principal place of business in Redmond, Washington and doing business in the State of Kentucky in providing and selling aerial work lifts and platforms. Defendant Genie is a wholly owned subsidiary of Defendant Terex Corporation (hereinafter "Terex") which is a designer, manufacturer and seller of construction equipment incorporated in the State of Connecticut with its

principal place of business in Westport, Connecticut.

3. Defendant Sunbelt Rentals, Inc. (hereinafter "Sunbelt") is an equipment rental company incorporated in the State of South Carolina with its principal place of business in Fort Mill, South Carolina and doing business in the State of Kentucky in the rental and distribution of construction equipment including aerial work lifts and platforms. Defendant Sunbelt is a wholly owned subsidiary of Defendant Ashtead Group plc (hereinafter "Ashtead") which is an equipment rental group incorporated in the United Kingdom with its principal place of business in London, England.

4. The amount of controversy exceeds Seventy-five Thousand Dollars ($75,000.00), exclusive of interest and costs.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds Seventy-five Thousand Dollars ($75,000.00) and because there is complete diversity of citizenship between Plaintiffs and Defendants. Venue is appropriate pursuant to 28 U.S.C. §1391.

**BACKGROUND**

6. Plaintiffs reallege and restate, as if fully rewritten herein, the allegations contained in paragraphs 1 through 5 of this Complaint.

7. Defendant Genie and Defendant Terex individually and in concert directed and/or participated in the design, manufacturing, marketing, selling or placing into the stream of commerce the self-propelled telescopic boom Model S-80/S-85 (hereinafter "Genie S-80/S-85") which is an aerial lift and work platform used in construction projects.

8. Defendant Sunshine and Defendant Ashtead individually and in concert directed and/or participated in the rental, marketing, maintenance, repair and distribution into the stream of commerce of aerial lifts and work platforms including the Genie S-80/S-85 for use in the construction industry.

9. On or about April 22, 2010, Plaintiff Leon Pruitt was operating a Genie S-80/S-85 aerial lift on behalf of his employer, CJ Mahan Construction Company, who had rented the Genie S-80/S-85 from Defendant Sunbelt for use in a construction project that involved the erection of a bridge across the Ohio River near the city of Gratz, Kentucky.

10. On the above-mentioned date, as Plaintiff Leon Pruitt was operating the 19 ton Genie S-80/S-85 down a slope at the construction site, the aerial lift suddenly and unexpectedly began to pick up speed and make an uncharacteristic loud squealing sound. Despite Plaintiff's best efforts in the exercise of reasonable care to slow down and bring the Genie S-80/S-85 to a stop by use of the lift's designated controls designed for that purpose, the aerial lift continued to pick up speed. Confronted with the danger of colliding with several of his co-employees at the bottom of the slope, Plaintiff steered the aerial lift onto an embankment which caused the lift to roll over, pinning Plaintiff beneath the overturned piece of equipment.

11. As a direct and proximate result of the failure of the aerial lift to function properly, Plaintiff Leon Pruitt suffered extensive and permanent injuries including, but not limited to, a crushing injury to his left arm with permanent impairment of the use of his wrist and hand, a fractured pelvis, a fractured collarbone, rib fractures, a closed head injury and injuries to his back, all of which have and will in the future cause Mr. Pruitt to suffer permanent physical and emotion pain, suffering disability, scarring, loss of earnings, loss of earning capacity and medical expenses.

**COUNT ONE**

**First Cause of Action - Negligence**

12. Plaintiffs reallege and restate, as if fully rewritten herein, the allegations contained in paragraphs 1 through 11 of this Complaint.

13. Defendants, individually and/or in concert. by and through their agents, employees and representatives, failed to exercise ordinary care in the design, manufacturing, marketing, sale

Case: 3:10-cv-00081-DCR Doc #: 1 Filed: 12/15/10 Page: 5 of 9 - Page ID#: 5

and/or distribution of the Genie S-80/S-85 at issue when they knew or should have known that defects and unreasonably dangerous propensities could occur, including, but not limited to, the failure of the operating controls on the Genie S-80/S-85 to function properly, and thereby proximately and foreseeably causing injuries.

14. Defendants, individually and/or in concert, failed to exercise ordinary care in the following respects including, but not limited to:

a. In failing to properly design the Genie S-80/S-85;

b. In failing to properly manufacture the Genie S-80/S-85;

c. In failing to properly inspect and test the Genie S-80/S-85;

e. In failing to warn of the dangerous and defective condition of the Genie S-80/S-85;

f. In misrepresenting through advertisement to the construction industry that the Genie S-80/S-85 was safe for use on construction projects;

g. In failing to provide adequate and proper maintenance and/or repair of the Genie S-80/S-85 at issue.

15. Defendants, individually and/or in concert, knew or should have known that users/operators of the Genie S-80/S-85, such as Leon Pruitt, could foreseeably suffer serious injury as a result of their failure to exercise ordinary care.

16. As a direct and proximate result of negligence of Defendants, individually and/or in concert, Plaintiff Leon Pruitt has and will in the future suffer permanent physical and emotion pain, suffering disability, scarring, loss of earnings, loss of earning capacity and medical expenses due to the injuries that he sustained on April 22, 2010 as described above.

**COUNT TWO**

**Second Cause of Action - Breach of Warranty**

17. Plaintiffs reallege and restate, as if fully rewritten herein, his allegations contained in

Case: 3:10-cv-00081-DCR Doc #: 1 Filed: 12/15/10 Page: 6 of 9 - Page ID#: 6

paragraphs 1through 16 of this Complaint.

18. Defendants, individually and/or in concert, are in the business of designing, manufacturing, marketing, advertising, selling, renting, maintaining and distributing construction equipment, including the Genie S-80/S-85 which is the subject of the Complaint herein, for ultimate use by users such as the Plaintiff Leon Pruitt.

19. Defendants, individually and/or in concert, expressly warranted that the Genie S-80/S-85 was fit and safe for its ordinary intended purpose.

20. By virtue of selling, renting and distributing the Genie S-80/S-85 into the stream of commerce, Defendants, individually and/or in concert, expressly and impliedly warranted that the Genie S-80/S-85 was fit and safe for its ordinary, intended purposes and was not unreasonably dangerous to the user.

21. The Genie S-80/S-85 described herein was defective in that it was unfit and unsafe for its ordinary and intended purpose.

22. The defects existed at the time the Genie S-80/S-85 left the hands of the Defendants.

23. The Genie S-80/S-85 which Plaintiff Leon Pruitt was operating at the time that he was injured on April 22, 2010 was substantially in the same condition as when it left the hands of the Defendants and was not substantially altered.

24. Defendants, individually and/or in concert, breached the express and implied warranties for the Genie S-80/S-85 described herein because the Genie S-80/S-85 was defective.

25. As a direct and proximate result of Defendants' breach of express and implied warranty, individually and/or in concert, Plaintiff Leon Pruitt has and will in the future suffer permanent physical and emotion pain, suffering disability, scarring, loss of earnings, loss of earning capacity and medical expenses due to the injuries that he sustained on April 22, 2010 as described above.

**COUNT THREE**

**Third Cause of Action - Strict Liability**

26. Plaintiffs reallege and restate, as if fully rewritten herein, the allegations contained in paragraphs 1 through 25 of this Complaint.

27. That at all times mentioned herein, the Defendants were in the business of manufacturing, designing, selling and distributing construction equipment, including the Genie S-80/S-85.

28. Plaintiffs state that the defects existed at the time of manufacturing and distribution and when the product left the hands of the Defendants, and that the Genie S-80/S-85 at the time of the incident at issue was in substantially the same condition as at the time of manufacturing and distribution and had not been substantially altered from the manufactured and distributed condition when it was used by the Plaintiff.

29. Plaintiffs state that the defects existed at the time of designing and the design had not been substantially altered when it reached the hands of the Plaintiff.

30. Defendants, individually and/or in concert, were aware or through the exercise of reasonable and ordinary diligence should have been aware that the Genie S-80/S-85 was sold in an unreasonably dangerous condition and that the defects could foreseeably cause injury to the ultimate user, including the Plaintiff Leon Pruitt.

31. Defendants, individually and/or in concert, are strictly liable in tort for the defective design and manufacturing of the Genie S-80/S-85.

32. As a direct and proximate result of failure of the Defendants to properly manufacture, design, sell or distribute the Genie S-80/S-85, individually and/or in concert, Plaintiff Leon Pruitt has and will in the future suffer permanent physical and emotion pain, suffering disability, scarring, loss of earnings, loss of earning capacity and medical expenses due to the injuries that he sustained on April 22, 2010 as described above.

**COUNT FOUR**

**Fourth Cause of Action - Failure to Warn**

33. Plaintiffs reallege and restate, as if fully rewritten herein, the allegations contained in paragraphs 1 through 32 of this Complaint.

34. Defendants, individually and/or in concert, had a duty to warn the ultimate consumers, including Plaintiff, of the inherently dangerous conditions of the Genie S-80/S-85.

35. Defendants, individually and/or in concert, breached their duty to warn the Plaintiff of the inherently dangerous conditions of the Genie S-80/S-85.

36. As a direct and proximate result of Defendants' failure to warn of the inherently dangerous and defective conditions, individually and/or in concert, Plaintiff Leon Pruitt has and will in the future suffer permanent physical and emotion pain, suffering disability, scarring, loss of earnings, loss of earning capacity and medical expenses due to the injuries that he sustained on April 22, 2010 as described above.

**COUNT FIVE**

**Plaintiff Rebecca Pruitt's Loss of Consortium Claim**

37. Plaintiffs reallege and restate, as if fully rewritten herein, the allegations contained in paragraphs 1 through 36 of this Complaint

38. Plaintiff Rebecca Pruitt is the wife of Plaintiff Leon Pruitt, and as a direct and proximate result of the negligence, strict liability in tort, breach of express and implied warranties and failure to warn of the Defendants, individually and/or in concert, she has and will in the future suffer the loss of her husband's services and consortium.

WHEREFORE, Plaintiffs Leon Pruitt and Rebecca Pruitt demand judgment for compensatory damages against the Defendants, jointly and separately, in excess of $1 million plus

Case: 3:10-cv-00081-DCR Doc #: 1 Filed: 12/15/10 Page: 9 of 9 - Page ID#: 9

their costs herein expended and all other relief to which they may be entitled in law and in equity.

Respectfully submitted,

**s/ Todd M. Powers**
Todd M. Powers (KY 83887)
Megan C. Ahrens (KY 92830)
Schroeder, Maundrell, Barbiere & Powers
5300 Socialville Foster Road, Suite 200
Mason, Ohio 45040
(513) 583-4200; Fax: (513) 583-4203
tpowers@smbplaw.com
mahrens@smbplaw.com

**s/ R. Lanahan Goodman**
R. Lanahan Goodman (OH 0001586)
3706 Broadview Drive
Cincinnati, Ohio 45208
(513) 533-0528; Fax: (513) 321-4636
RLGoodman@fuse.net
**ATTORNEYS FOR PLAINTIFFS**

JURY DEMAND

Plaintiffs demand a trial by jury as to all issues in this action.

**s/ Todd M. Powers**
Todd M. Powers

# U.S. District Court
# Eastern District of Kentucky (Frankfort)
# CIVIL DOCKET FOR CASE #: 3:10-cv-00081-DCR

Pruitt et al v. Genie Industries, Inc. et al
Assigned to: Judge Danny C. Reeves
Demand: $1,000,000
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 12/15/2010
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Leon D. Pruitt**

represented by **Megan C. Ahrens**
Schroeder, Maundrell, Barbiere & Powers
5300 Socialville-Foster Road
Suite 200
Mason, OH 45040
513-707-4200
Fax: 513-583-4203
Email: mahrens@smbplaw.com
*ATTORNEY TO BE NOTICED*

**R. Lanahan Goodman**
3706 Broadview Drive
Cincinnati, OH 45208
513-533-0528
Fax: 513-321-4636
Email: rlgoodman@fuse.net
*ATTORNEY TO BE NOTICED*

**Todd M. Powers**
Schroeder, Maundrell, Barbiere & Powers
5300 Socialville-Foster Road
Suite 200
Mason, OH 45040
513-583-4200
Fax: 513-583-4203
Email: tpowers@smbplaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rebecca Pruitt**

represented by **Megan C. Ahrens**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. Lanahan Goodman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd M. Powers**
(See above for address)

*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Genie Industries, Inc.**

**Defendant**

**Terex Corporation**

**Defendant**

**Sunbelt Rentals, Inc.**

**Defendant**

**Ashtead Group plc**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/15/2010 | 1 | COMPLAINT AND JURY DEMAND ( Filing fee $350; receipt number 1911325), filed by Rebecca Pruitt, Leon D. Pruitt. (Attachments: # 1 Waiver of Service of Summons form to be completed by atty, # 2 Civil Cover Sheet)(TED) (Additional attachment(s) added on 12/16/2010: # 3 Case Assignment) (TED). (Entered: 12/16/2010) |
| 12/16/2010 | | Conflict Check run. (TED) (Entered: 12/16/2010) |
| 12/16/2010 | | NOTICE OF DEFICIENCY TO Todd Powers re 1 Complaint; Attorney notified clerk the summons should be returned via U.S. Mail; however, a prepared summons was not attached to the electronic filing of the complaint in the fictitioius miscellaneous case number 10-99999. A summons may be issued by presenting the prepared summons to the Clerk for issuance on paper or by electronically filing a pleading entitled Notice of Filing with the prepared summons as an attachment within 7 calendar days. cc: COR (TED) (Entered: 12/16/2010) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 12/17/2010 11:15:55 | | | |
| **PACER Login:** | so0539 | **Client Code:** | sunbelt |
| **Description:** | Docket Report | **Search Criteria:** | 3:10-cv-00081-DCR |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT

for the

Eastern District of Kentucky

Leon D. Pruitt
*Plaintiff*
v.
Genie Industries, Inc.
*Defendant*

Civil Action No.

## WAIVER OF THE SERVICE OF SUMMONS

To: Todd M. Powers
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from 12/15/2010, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: ____________

*Signature of the attorney or unrepresented party*

*Printed name of party waiving service of summons*

*Printed name*

*Address*

*E-mail address*

*Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Leon D. Pruitt

**DEFENDANTS**
Genie Industries, Inc.

(b) County of Residence of First Listed Plaintiff: Lewis County, Kentucky
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: King County, Washington
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Todd M. Powers, Schroeder, Maundrell, Barbiere & Powers
5300 Socialville Foster Road, Suite 200, Mason, Ohio 45040
513-583-4200

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☒ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332

Brief description of cause:
Personal injury caused by a defective aerial lift

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $1,000,000+

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ________ DOCKET NUMBER ________

DATE 12-16-10

SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

U.S. District Court Eastern District of Kentucky DCN Site Page 1 of 1

# *Civil*
# *Case Assignment*

Case number **3:10-CV-81**

Assigned : Judge Danny Reeves
Judge Code : 4314

Assigned on 12/16/2010

Request New Judge

INBOUND NOTIFICATION : FAX RECEIVED SUCCESSFULLY **

| TIME RECEIVED | REMOTE CSID | DURATION | PAGES | STATUS |
|---|---|---|---|---|
| April 22, 2010 4:32:33 PM EDT | | 565 | 12 | Received |

2028-09-07 03:20 8 P 1

PC#: 140
1634 BROADWAY STREET
CLARKSVILLE, IN 47129
812-284-5268

SUNBELT RENTALS, INC.
Salesman: 13219 SIERY, JAMES (132)
Typed By: SKELLEY

# RENTAL OUT

Job Site
C J MAHAN CONSTRUCTION CO #53
3505 BASHFORD AVE
LOUISVILLE, KY 40218-3105

C#: 614-875-8200 J#: 614-314-3616

Customer: 2000010
C J MAHAN CONSTRUCTION CO #53
PO BOX 670
GROVE CITY, OH 43123

Contract #.. 21300532
Contract dt. 8/13/09
Date out.... 8/14/09 9:00 AM
Est return.. 8/11/09 9:00 AM
Job Loc..... 3505 BASHFORD AVE, LOUISVILLE
Job No...... 11- C J MAHAN CONSTR
P.O. #...... 1031-08
Ordered By.. PIPER, JEFF
NET DUE UPON RECEIPT

| QTY | EQUIPMENT # | Min | Day | Week | 4 Week | Amount |
|---|---|---|---|---|---|---|
| 1.00 | 80' MANLIFT 4WD DSL | 600.00 | 600.00 | 1400.00 | 2100.00 | |

361412 Make: GENIE Model: S-80D 4WD Ser #: S8008-8054
HR OUT: 124.400

*** EQP MSG ***
* Familiarization of the equipment stated on this contract has been offered to the customer.
* An Operator's Manual and the Manual of Responsibilities has been provided with the equipment stated on this contract.
* OSHA 1926.453 & ANSI Regulation A92 requires All Boom Lift occupants of the platform to wear Personal Fall Protection. Personal Fall Protection equipment is available for purchase from Sunbelt Rentals.

SALES ITEMS:

| Qty | Item number | Unit | Price | |
|---|---|---|---|---|
| 1 | ENVIRONMENTAL<br>ENVIRONMENTAL | EA | | |
| | DELIVERY CHARGE | | | 95.00 |
| | PICKUP CHARGE | | | 95.00 |

Rate your rental experience www.sunbeltrentals.com/survey

IF THE EQUIPMENT DOES NOT WORK PROPERLY, NOTIFY THE OFFICE AT ONCE — MULTIPLE SHIFTS OR OVERTIME RATES MAY APPLY — CUSTOMER IS RESPONSIBLE FOR REFUELING, DAMAGES AND REPAIRS

1. The total charges in this Contract is an estimate based on the estimated rental period provided by Customer.
2. Customer assumes all risks associated with the Equipment during the Rental Period, including injury and damage to persons, property and the equipment.
3. Customer is responsible for and shall only permit properly trained, authorized individuals, who are not under the influence of drugs or alcohol, to use the Equipment.
4. If the Equipment does not operate properly, the Equipment is not suitable for customer's intended use, the Equipment did not come with operating and safety instructions or customer has any questions regarding use of the Equipment, do not operate the Equipment and contact Sunbelt immediately.
5. Misuse of the Equipment or using damaged or malfunctioning Equipment may result in serious bodily injury or death.
6. Customer has received, read, understands and agrees to the estimated charges herein and all the terms and conditions of this Contract, including the Release and Indemnification provision in Section 8.
7. Customer must call to request pickup of Equipment, retain Pick Up Number given by Sunbelt and is responsible for Equipment until actually retrieved by Sunbelt.
8. For operations in California: Customer is renting equipment registered under the California Air Resources Board (CARB) Portable Equipment Registration Program (PERP). The operator of this equipment is subject to the requirements of the PERP regulation and local Air Pollution Control District rules. Under the PERP Regulation, the renter is required to keep a copy of the rental agreement and CARB registration certificate, including operating conditions and notification requirements, with the equipment at all times. By signing this form, the renter acknowledges receipt of these documents.

Customer is declining Rental Protection Plan ______ (Customer Initials)

| Kevin Lape | 8-14 | Kevin Lape | GT | 8-14-09 |
|---|---|---|---|---|
| Customer Signature | Date | Name Printed | Delivered By | Date |

# ADDITIONAL TERMS AND CONDITIONS

1. **TERMS.** Customer's rental of the Equipment is conditioned upon Customer's agreement with the terms of this Contract. All of the terms herein are incorporated into all future contracts between Sunbelt and Customer upon Customer's use of Sunbelt's equipment under these contracts, without objection, unless subsequently modified in writing by Sunbelt. Any reference in Customer's purchase order or any other Customer document (except for any executed Customer credit application or additional terms which are required by law) shall be void and deemed rejected. "Customer" is identified on the front of this Contract and includes any representatives, agents, officers or employees of Customer and anyone signing this Contract on their behalf. "Equipment" is the equipment and/or services identified on the front of this Contract, together with all replacements, repairs, additions, attachments and accessories thereto. Customer represents that the "Site Address" is the location where the Equipment will be located throughout the Rental Period and is identified on the front of this Contract. "Store" is the Sunbelt store location identified on the front of this Contract. "Sunbelt" is Sunbelt Rentals, Inc. and its affiliated companies, their respective officers, directors, employees and agents.

2. **RENTAL CONTRACT.** Sunbelt hereby rents to Customer and Customer rents from Sunbelt the Equipment pursuant to this Contract. Customer shall pay Sunbelt the rental rates (including any minimum rental identified on the front of this Contract) and other charges described herein when due/return the Equipment to Sunbelt as required herein and otherwise comply with this Contract. This Contract is a true lease. The Equipment (a) is and shall remain the personal property of Sunbelt; (b) shall not be considered affixed to real property; and (c) shall be maintained by Customer such that the Equipment may be removed without damaging any building or property.

3. **PERMITTED USE.** Customer agrees that Sunbelt has no control over the manner in which the Equipment is operated during the Rental Period by Customer or any third party that Customer implicitly or explicitly permits. Customer warrants that: (a) prior to each use of the Equipment, Customer has or will inspect the Equipment to confirm that the Equipment is in good condition, without defects, includes readable decals and operating and safety manuals and is suitable for Customer's intended use; (b) any apparent agent at the Site Address is authorized to accept delivery of the Equipment (and if Customer requests early morning delivery, Customer authorizes Sunbelt to leave the Equipment at the Site Address without requirement of written receipt); (c) Customer shall immediately notify Sunbelt if the Equipment is lost, damaged, stolen, unsafe, disabled or malfunctioning, defects are discovered, the Equipment is levied upon or threatened with seizure, or if an Incident (defined below) occurs; (d) Customer has received from Sunbelt all information needed or requested regarding the operation of the Equipment; (e) Sunbelt is not responsible for providing operator or other training unless Customer specifically requests and pays for training that Sunbelt has agreed to provide (Customer being responsible to obtain all training that Customer desires from third parties if Sunbelt does not provide such training, prior to the Equipment's use); (f) only authorized individuals shall use and operate the Equipment ("authorized Individuals" being those who are familiar with and properly trained to use the Equipment and who are not under the influence of drugs or alcohol); (g) the Equipment's use shall be in a careful manner, in compliance with all operation and safety manuals and other instructions provided on, in or with the Equipment and all Federal, State and local laws and licenses, including but not limited to, OSHA, as revised; and (h) the Equipment shall be kept in a secure location.

4. **PROHIBITED USE.** Customer shall not (a) alter, disfigure, or cover up any numbering, lettering, decals, or insignia on the Equipment or remove any operation or safety manuals; (b) assign its rights under this Contract; (c) move the Equipment from the Site Address without Sunbelt's written consent of the new location; (d) intentionally damage the Equipment; (e) use the Equipment in a negligent, reckless, illegal, unauthorized or abusive manner nor allow the operation of the Equipment for an illegal purpose or by any unauthorized individual (Customer acknowledging that the Equipment may be dangerous if used improperly or by untrained parties).

5. **MAINTENANCE.** Customer shall perform routine maintenance of the Equipment, including routine inspections and maintenance of fuel and oil levels, grease, filters, cooling system, water, batteries, cutting edges, and cleaning in accordance with the manufacturer's specifications (all other maintenance or repairs may only be performed by Sunbelt, but Sunbelt has no responsibility during the Rental Period to inspect or perform any maintenance or repairs unless Customer requests a service call). If Sunbelt determines that repairs to the Equipment are required, other than Ordinary Wear and Tear, Customer shall pay the full cost of repairs and rental of the Equipment until the repairs are completed. "Ordinary Wear and Tear" means normal deterioration considered reasonable in the equipment rental industry for one shift use. Sunbelt has the right to enter, inspect and observe the use of the Equipment wherever located. Customer has the authority to and hereby grants Sunbelt the right to enter the physical location of the Equipment for the purposes set forth herein. Sunbelt shall be responsible for repairs needed because of Ordinary Wear and Tear. Customer agrees that repair or replacement of the Equipment is Customer's exclusive remedy for Sunbelt's breach of this Contract. Notwithstanding Sunbelt's service commitment, Sunbelt shall have no obligation to (a) repair or replace Equipment damaged by Customer's breach of this Contract or other misuse, abuse or neglect; or (b) stop the Rental Period, commence repairs or rent other equipment to Customer until Customer or Customer's insurance company has inspected such Equipment and agreed to pay or paid for such costs.

6. **CUSTOMER LIABILITY FOR DAMAGE AND LOSS.** CUSTOMER ASSUMES DURING THE RENTAL PERIOD (DEFINED BELOW) ALL RISKS ASSOCIATED WITH THE POSSESSION, CUSTODY AND OPERATION OF AND FULL RESPONSIBILITY FOR, THE EQUIPMENT, INCLUDING BUT NOT LIMITED TO, PERSONAL INJURY, DEATH, RENTAL CHARGES, LOSSES, DAMAGES AND DESTRUCTION, INCLUDING TRANSPORT, LOADING AND UNLOADING. "Incident" is any fine, citation, theft, accident, casualty, loss, injury, death or damage to person or property, claimed by any person, or may be or appears to have occurred on, in connection with, or around the Equipment. After an Incident, Customer shall (a) immediately notify the police and Sunbelt; (b) secure and maintain the Equipment and the surrounding premises in the condition existing at the time of such Incident, until Sunbelt and/or its designees investigate such Incident; (c) immediately after receipt submit to Sunbelt copies of all police or other third party reports and notify Sunbelt of any other reports; and (d) pay Sunbelt, in addition to other sums due herein the rental rate for Equipment until the repairs are completed or Equipment replaced plus (i) the manufacturer's list price on the date of the loss ("MSLP") of the lost or destroyed Equipment ("lost" being when Equipment's location is unknown, or Customer is unable to recover for a period of 10 days); or (ii) the full cost of repairs of damaged Equipment. Accrued rental charges shall not be applied against such additional amounts. Sunbelt shall have the immediate right, but not obligation, to reclaim any Equipment involved in any Incident.

7. **NO WARRANTIES.** Sunbelt does not design or manufacture the Equipment and is not the agent of the party(ies) that do. SUNBELT DISCLAIMS ANY AND ALL REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT ITS DURABILITY, CONDITION, MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE. CUSTOMER ACKNOWLEDGES ACCEPTANCE OF THE EQUIPMENT ON AN "AS IS, WHERE IS" BASIS, WITH "ALL FAULTS" AND WITHOUT ANY RECOURSE WHATSOEVER AGAINST SUNBELT. CUSTOMER ASSUMES ALL RISKS ASSOCIATED WITH THE EQUIPMENT AND RELEASES SUNBELT FROM ANY AND ALL LIABILITIES AND DAMAGES (INCLUDING LOST PROFITS, PERSONAL INJURY, AND SPECIAL, INCIDENTAL AND CONSEQUENTIAL DAMAGES) IN ANY WAY CONNECTED WITH THE EQUIPMENT, ITS OPERATION OR USE OR ANY DEFECT OR FAILURE THEREOF OR A BREACH OF SUNBELT'S OBLIGATIONS HEREIN.

8. **RELEASE AND INDEMNIFICIATION.** TO THE FULLEST EXTENT PERMITTED BY LAW, CUSTOMER INDEMNIFIES, RELEASES, HOLDS SUNBELT HARMLESS AND AT SUNBELT'S REQUEST, DEFENDS (WITH COUNSEL APPROVED BY SUNBELT) FROM AND AGAINST ALL LIABILITIES, CLAIMS, LOSSES, DAMAGES, AND EXPENSES (INCLUDING ATTORNEY'S FEES AND EXPENSES) HOWEVER ARISING OR INCURRED, RELATED TO ANY INCIDENT, ANY DAMAGE TO PROPERTY, INJURY TO, OR DEATH OF, ANY PERSON OR ANY CONTAMINATION OR ALLEGED CONTAMINATION, OR VIOLATION OF LAW OR REGULATION CAUSED BY OR CONNECTED WITH THE USE, POSSESSION OR CONTROL OF THE EQUIPMENT DURING THE RENTAL PERIOD OR BREACH OF THIS CONTRACT, WHETHER OR NOT CAUSED BY THE ACTIVE OR PASSIVE NEGLIGENCE OR OTHER FAULT OF ANY PARTY INDEMNIFIED HEREIN AND ANY OF THE FOREGOING ARISING OR IMPOSED IN ACCORDANCE WITH THE DOCTRINE OF STRICT OR ABSOLUTE LIABILITY. CUSTOMER'S INDEMNITY OBLIGATIONS SHALL SURVIVE THE EXPIRATION OR TERMINATION OF THIS CONTRACT. IF ANY PART OF THIS SECTION IS DETERMINED INVALID BY A COURT OF COMPETENT JURISDICTION, CUSTOMER AGREES THAT THIS RELEASE AND INDEMNIFICATION SHALL BE ENFORCEABLE TO THE FULLEST EXTENT PERMITTED BY LAW.

9. **INSURANCE.** During the Rental Period, Customer shall maintain, at its own expense, the following minimum insurance coverage: (a) general liability insurance of not less than $1,000,000 per occurrence, including but not limited to, coverage for Customer's contractual liabilities herein (including the release and indemnification clause contained in Section 8); (b) if the RPP (defined below) is not elected and paid for, property insurance against loss by all risks to the Equipment, in an amount at least equal to the MSLP thereof; (c) worker's compensation insurance as required by law; and (d) if the Equipment is to be used on any roadway, automobile liability and physical damage insurance (including comprehensive and collision coverage, a non-owned vehicle endorsement and uninsured/underinsured motorist coverage), in the same amounts set forth in subsections (a) and (b). Such policies shall be primary (and not on an excess basis), on an occurrence basis, name Sunbelt as an additional insured and loss payee, and provide for Sunbelt to receive at least 30 days prior written notice of any cancellation or material change in such coverage. Customer shall provide Sunbelt with certificates of insurance evidencing the coverages required above prior to any rental and any time upon Sunbelt's request (failure to provide such certificates may constitute a breach of this Contract). THE INSURANCE REQUIRED HEREIN DOES NOT RELIEVE CUSTOMER OF ANY OF CUSTOMER'S RESPONSIBILITIES, INDEMNIFICATION OR OTHER OBLIGATIONS HEREIN, OR FOR WHICH CUSTOMER MAY BE LIABLE BY LAW OR OTHERWISE.

10. **RENTAL PROTECTION PLAN ("RPP").** If Customer has elected the RPP and the Equipment is lost, stolen, damaged or destroyed, provided the Conditions are satisfied and an Exclusion does not apply, then Customer's repair or replacement responsibility in Sections 5 and 6 is modified by the RPP and Sunbelt shall limit the amount Sunbelt collects from Customer for the Equipment loss, damage or destruction to the following amounts: (a) 10% of the MSLP for Equipment stolen from a secure location (being defined as under lock and key with only Customer having access thereto); (b) 50% of the MSLP for Equipment stolen from an unsecured location; (c) 50% of the cost of repairs for incidental or accidental damage to Equipment less the greater of $500 or 10% of the MSLP; (d) 50% of the MSLP of destroyed Equipment less the greater of $500 or 10% of MSLP; (e) costs in excess of $50 for tire puncture repairs, if dispatched by Sunbelt (excludes foam filled tires, demolition tires and tire replacement, the entire cost of repair and/or replacement being Customer's responsibility in such events); and (f) nothing for the rental charges which would otherwise accrue during the period when damaged or destroyed Equipment is being repaired or replaced by Sunbelt or, for lost or stolen Equipment, after Sunbelt receives the police report. THE RPP IS NOT INSURANCE AND DOES NOT PROTECT CUSTOMER FROM LIABILITY TO SUNBELT OR OTHERS ARISING OUT OF POSSESSION OR OPERATION OF THE EQUIPMENT, INCLUDING INJURY OR DAMAGE TO PERSONS OR PROPERTY.

i. **RPP Conditions.** The following "Conditions" must be satisfied for the RPP to apply: (A) Customer accepts the RPP; (B) Customer pays 14% of the gross rental charges as the fee for the RPP; (C) Customer fully complies with the terms of this Contract; (D) Customer's account is current at the time of the loss, theft, damage or destruction of the Equipment; and (E) none of the Exclusions apply.

ii. **RPP Exclusions.** Customer assumes the Exclusion risks, meaning that if any Exclusion occurs, the RPP does NOT cover the loss, theft, damage or destruction resulting from such Exclusion. "Exclusions" shall mean loss, theft, damage or destruction of the Equipment: (A) due to possession and/or operation of Equipment by a person other than Customer or Customer's authorized employee or any dishonest act by Customer; (B) due to the Equipment's operation in a manner inconsistent with the manufacturer's instructions, or contrary to this Contract, including but not limited to the Equipment exceeding rated capacity, being overloaded, misuse, abuse, negligence, improper servicing or lack of Customer required maintenance; (C) due to the Equipment's collision, overturning, upset, rolling over or striking overhead objects; (D) caused by vandalism, malicious mischief, disappearance, loss, theft or wrongful conversion of Equipment not reported by Customer to the police within 48 hours of discovery, and substantiated by a written police report (promptly delivered to Sunbelt); (E) occurring during the loading, unloading or transportation of the Equipment; (F) due to flood, wind, storm, earthquake or other external causes; (G) due to nuclear reaction, radiation, radioactive contamination, exposure and/or contamination with or from hazardous materials or any other cause; (H) due to seizure or destruction of Equipment by order of governmental authority; and (I) accessories, which are not being charged the RPP fee. THE EXCLUSIONS ARE RISKS ASSUMED BY CUSTOMER AND ARE NOT COVERED BY THE RPP.

iii. **Recovery of Equipment.** If the Equipment is recovered at a later date, Sunbelt retains ownership of the Equipment. Notwithstanding anything to the contrary in this Contract, if lost or stolen Equipment is later recovered, neither Customer nor Customer's insurance company shall have any ownership rights in it, regardless of any payments made by Customer or Customer's insurance company with respect to such Equipment, all of which payments are non-refundable. Customer agrees to promptly return any Equipment that is recovered.

iv. **Subrogation.** Sunbelt shall be subrogated to Customer's rights to recover against any person or entity relating to any loss, theft, damage or destruction to the Equipment. Customer shall cooperate with, assign Sunbelt all claims and proceeds arising from such loss, theft, damage or destruction, execute and deliver to Sunbelt whatever documents are required and take all other necessary steps to secure in Sunbelt such rights.

11. **RENTAL PERIOD.** "Rental Period" commences when the Equipment is delivered to Customer or the Site Address and continues until the Equipment is returned to the Store during normal business hours, provided Customer has otherwise complied with this Contract and the Equipment is in the condition required herein. Sunbelt may terminate this Contract at any time, for any reason, after the estimated Rental Period identified on the front of this Contract. If Customer elects for Sunbelt to pick up the Equipment, the day Customer calls Sunbelt and receives a Pick Up Number (defined below), Customer may receive a credit for the rental charges from the date the Pick Up Number is given (so that the Rental Period ends on the date the Pick Up Number is given), provided Customer has otherwise complied with this Contract and the Equipment is in the condition required herein.

12. **RENTAL RATES.** The total charges specified in this Contract are: (a) estimated based upon Customer's representation of the estimated Rental Period identified on the front of this Contract (rental rates beyond the estimated Rental Period may change); and (b) for the Equipment's use for "one shift" being not more than 8 hours per day and 40 hours per week unless otherwise noted. Weekly and monthly rental rates shall not be prorated and the daily rental rate shall apply. Customer shall notify Sunbelt if the Equipment is used in excess of the above number of hours or the estimated Rental Period, and if so used, Customer shall pay additional fees. In addition to the rental rates and other fees for the Equipment, Customer is responsible for (i) all licenses, fees and taxes based on Customer's use of the Equipment; (ii) delivery and pickup costs to and from the Store; (iii) maintenance, repairs and replacements to the Equipment as provided herein; (iv) a cleaning fee if the Equipment is returned unclean; (v) fees for lost keys; (vi) fuel used during the Rental Period (Customer may either return the Equipment fully fueled or a fuel charge shall be assessed (designed to cover Sunbelt's direct and indirect costs of refueling the Equipment)); and (vii) an environmental charge (designed to cover Sunbelt's direct and indirect costs of handling and disposing of wastes and hazardous materials). The environmental charge is not a government mandated charge. Payment for all estimated charges is due at the time of rental, in cash or by a credit card, unless Sunbelt approves Customer's executed credit application. The convenience charge for off road diesel fuel does not include state motor fuel taxes.

13. **PAYMENT.** Customer is liable for and shall pay all rental charge(s) and applicable federal, state and/or local taxes, without any offsets, deductions or claims, in full no later than the end of the Rental Period, or if an approved credit customer, upon receipt of Sunbelt's invoice. Customer must notify Sunbelt in writing of any disputed amounts, including credit card charges, within 15 days after the receipt of the invoice/contract or Customer shall be deemed to have irrevocably waived its right to dispute such amounts and the amounts shall be deemed final and binding. At Sunbelt's discretion, any credit account with a delinquent balance may be placed on a cash basis, deposits may be required and the Equipment picked up without notice. Due to the difficulty in fixing actual damages caused by late payment, Customer agrees that a service charge equal to the lesser of 1.5% per month or the maximum rate permitted by law shall be assessed on all delinquent accounts, until paid in full. Deposits are only required to be returned after all fees and expenses paid in full. Customer agrees that if a credit card is presented to pay for charges or to guarantee payment, Customer authorizes Sunbelt to charge the credit card the estimated charges specified in this Contract, any required security deposit and all additional charges subsequently incurred by Customer, including but not limited to, loss of or damages to the Equipment. Customer's obligations to return and pay for the amounts due herein shall survive the Rental Period and termination of this Contract.

14. **RETURN OF EQUIPMENT.** At the end of the Rental Period, the Equipment shall be returned to Sunbelt in the same condition it was received, less Ordinary Wear and Tear and free of any hazardous materials and contaminants. The Rental Period and this Contract shall not terminate and rental charges shall continue to accrue until Sunbelt confirms that the Equipment is returned in the condition required herein. If Sunbelt delivered the Equipment to Customer, Customer shall notify Sunbelt that the Equipment is ready to be picked up at the Site Address and obtain a "pick-up" number from Sunbelt evidencing such call ("Pick Up Number"); provided Customer remains liable for any loss of or damage to the Equipment until Sunbelt confirms that the Equipment is returned in the condition required herein (which Pick Up Number Customer should keep for its records as proof of such call). No pickups occur on Sundays and Saturday pickups are dependent on specific Store hours. If Customer picked up Equipment, Customer shall return Equipment to the same Store during that Store's normal business hours. Any loss of or damage to the Equipment resulting from a return other than as set forth above shall be Customer's sole responsibility. If the Equipment is not returned by the estimated end of the Rental Period specified on the front of this Contract, in addition to the charges set forth in this Contract, Customer agrees to pay the applicable rental rate for the Equipment until the end of the Rental Period.

15. **DEFAULT.** Customer shall be in default if Customer: (a) fails to pay sums when due; (b) breaches any provision of this Contract; (c) becomes a debtor in a bankruptcy proceeding, or goes into receivership; (d) places the Equipment at risk if Sunbelt, in good faith, deems itself insecure; (e) fails to return Equipment immediately upon Sunbelt's demand; or (f) is in default under any other contract with Sunbelt. If a Customer default occurs, Sunbelt shall have, in addition to all rights and remedies at law or in equity, the right to enter the Site Address or wherever the Equipment is located and repossess the Equipment without judicial process or prior notice. Customer shall pay all of Sunbelt's costs, including reasonable costs of collection, court costs and attorney's fees, incurred in exercising any of its rights or remedies herein. The use of false identification to obtain Equipment or the failure to return Equipment by the end of the Rental Period may be considered theft, subject to criminal prosecution and civil liability where permitted, pursuant to applicable laws. CUSTOMER WAIVES ANY RIGHT OF ACTION AGAINST SUNBELT FOR SUCH ENTRY OR REPOSSESSION.

16. **FINANCING.** This Contract and all of Customer's rights in and to the Equipment are subject and subordinate to all rights, title and interest of all persons (including, Sunbelt's secured lenders) who have financed or leased the Equipment or provided financing to Sunbelt.

17. **LIMITATION OF SUNBELT'S LIABILITY.** IN CONSIDERATION OF SUNBELT'S RENTAL OF THE EQUIPMENT TO CUSTOMER, CUSTOMER AGREES THAT SUNBELT'S LIABILITY WITH RESPECT TO THIS CONTRACT, INCLUDING ANY LIABILITY ARISING FROM SUNBELT'S OR ANY THIRD PARTY'S COMPARATIVE, CONCURRENT CONTRIBUTORY, PASSIVE OR ACTIVE NEGLIGENCE OR THAT ARISES AS A RESULT OF ANY STRICT OR ABSOLUTE LIABILITY, SHALL NOT EXCEED THE TOTAL RENTAL CHARGES PAID BY CUSTOMER UNDER THIS CONTRACT.

18. **JURY TRIAL WAIVER.** TO THE EXTENT PERMITTED BY LAW, IN ANY ACTION TO ENFORCE OR INTERPRET THE TERMS OF THIS CONTRACT, THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY. THIS WAIVER BEING A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THIS CONTRACT.

19. **COMPLIANCE WITH EXPORT AND IMPORT LAWS.** Customer acknowledges and agrees that removal of the Equipment from the United States is prohibited under this Agreement. If Customer desires to transport or cause the transport of the Equipment outside of the United States and/or to operate the Equipment outside of the United States, Customer must notify Sunbelt prior to taking such action and, subject to agreement by Sunbelt, a separate Rider to this Agreement shall be executed and the terms of such Rider shall be incorporated herein. Although prohibited under this Agreement, if Customer exports or re-exports the Equipment, Customer acknowledges its understanding that the Equipment is subject to export control laws and regulations of the United States government, including but not limited to the Export Administration Regulations, and that Customer is responsible for complying with such laws and regulations. Customer further acknowledges that it is responsible for: (a) determining whether export or re-export licenses or other authorizations are required, (b) obtaining any required license(s), authorization(s), or documentation prior to exporting or re-exporting the Equipment, (c) obtaining any required documentation necessary for return of the Equipment, and (d) ensuring no unauthorized transfers or diversions of the Equipment occur. Refer to www.bis.doc.gov for information.

20. **MISCELLANEOUS.** If this Contract identifies any Equipment that is to be purchased by Customer, Sunbelt sells and delivers such Equipment to Customer on an "AS IS, WHERE IS" basis, with all faults and without any warranties (other than manufacturer warranties, if any) in consideration for Customer's payment to Sunbelt of the full purchase price of the Equipment. Sunbelt retains title to the Equipment until Customer has paid in full. This Contract: (a) together with any Customer executed credit application, constitutes the entire agreement of the parties regarding the Equipment and may not be modified except by written amendment signed by the parties; and (b) shall be governed by the laws of the State of North Carolina, without regard to any conflicts of law principles. If any provision of this Contract is prohibited by law in any state, such provision shall, as to such state, be ineffective to the extent of such prohibition without invalidating the remaining provisions. Headings in this Contract are for convenience only. Any failure by Sunbelt to insist upon strict performance of any provision of this Contract shall not be construed as a waiver of the right to demand strict performance in the future. Customer, and the person signing this Contract, represents that: (i) they both have full authority to execute, deliver and perform this Contract; and (ii) this Contract constitutes a legal, valid and binding obligation of Customer, enforceable in accordance with its terms. When Customer is a buyer of Equipment, they are hereby notified that Sunbelt has assigned its rights (but not its obligations) in the agreement to sell the asset(s) described herein to Sunbelt Rentals Exchange, Inc., a qualified intermediary, as part of Section 1031 exchange.

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY) 08/29/09

PRODUCER
MJ Insurance, Inc.
PO Box 50435
Indianapolis, IN 46250-0435
317 805-7500

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

INSURED
C.J. Mahan Construction Company, LLC
P.O. Box 670
Grove City, OH 43123

| INSURERS AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: Zurich American Insurance Co. | 16535 |
| INSURER B: Illinois Natl Ins Co-AIG | 23817 |
| INSURER C: Travelers Property Casualty Co. of A | 25674 |
| INSURER D: American Guarantee & Liab Insur Co | 26247 |
| INSURER E: | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | | GENERAL LIABILITY | GLO967110101 | 07/01/09 | 07/01/10 | EACH OCCURRENCE | $1,000,000 |
| | | X COMMERCIAL GENERAL LIABILITY | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000 |
| | | CLAIMS MADE X OCCUR | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | | POLICY X PROJECT X LOC | | | | | |
| D | | AUTOMOBILE LIABILITY | BAP967110501 | 07/01/09 | 07/01/10 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | X ANY AUTO | | | | | |
| | | ALL OWNED AUTOS | | | | BODILY INJURY (Per person) | $ |
| | | SCHEDULED AUTOS | | | | | |
| | | X HIRED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | | X NON-OWNED AUTOS | | | | | |
| | | X HIRED & OWNED PHYSICAL DAMAGE | $1,000 COMP DED $1,000 COLL DED | | | PROPERTY DAMAGE (Per accident) | $ |
| | | GARAGE LIABILITY | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | ANY AUTO | | | | OTHER THAN AUTO ONLY: EA ACC | $ |
| | | | | | | AGG | $ |
| B | | EXCESS/UMBRELLA LIABILITY | BE23649412 | 07/01/09 | 07/01/10 | EACH OCCURRENCE | $5,000,000 |
| | | X OCCUR CLAIMS MADE | | | | AGGREGATE | $5,000,000 |
| | | | | | | | $ |
| | | DEDUCTIBLE | | | | | $ |
| | | X RETENTION $ 10,000 | | | | | $ |
| A | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | WC967110601 KY & TN | 07/01/09 | 07/01/10 | X WC STATUTORY LIMITS / OTHER | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | If yes, describe under SPECIAL PROVISIONS below | OH STOP GAP | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |
| C | | OTHER RTD/LSD EQPT FROM OTHERS INCL WATERBORNE** | QT660291D161TIL09 | 07/01/09 | 07/01/10 | SEE LIMIT IN D.O.O.-ALL RISK, ACV; REPL COST IF REQUIRED BY CONTRACT | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS
*EXCEPT 10 DAYS WRITTEN NOTICE OF CANCELLATION FOR NON-PAYMENT OF PREMIUM.
**OVERLOAD/OVERWEIGHT EXCLUSION DELETED AND BOOM/JIM EXCLUSION DELETED SUBJECT TO POLICY TERMS, CONDITIONS AND EXCLUSIONS.
Re: All equipment leased/rented from the Certificate Holder by the named
(See Attached Descriptions)

CERTIFICATE HOLDER

Sunbelt Rentals
1464 Martinsburg Pike
Winchester, VA 22603

CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 30* DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

AUTHORIZED REPRESENTATIVE

© ACORD CORPORATION 1988

## DESCRIPTIONS (Continued from Page 1)

insured. The Certificate Holder is included as Additional Insured on General Liability (CG2034 07/04) as required by written, signed contract as stated within the Additional Insured form, and Loss Payee on Leased/Rented Equipment. $1,500,000 Limit any one item and $3,500,000 Limit any one occurrence.